All right, when you're ready, the next case of the morning is number 24-50248, Tiana Dodson v. ExamWorks. We'll hear from Ms. Klein. May it please the Court, I'm Katie Klein. I'm here on behalf of the plaintiff, Dodson. And I'm here appealing the judge's ruling, Judge Noland, out of the Western District of Texas. And I would like to say as an overview that I believe that the court attempted to limit the case to only disgorgement and only to talk about the overbilling. But there were other claims that were pleaded in the pleading, and I'd like to address those as well. In this particular case, it's our opinion that there's manifest error in the judgment that was rendered. A 12B1 motion to dismiss the first amended complaint was filed. But before that, there was, before the judgment, there was a second amended complaint, which the judge did not pay attention to and did not include. And I recognize that there was not a motion for leave that was filed. And that's part of the issue here. But the case was dismissed with a superseded pleading and dismissed on the superseded pleading. ExamWorks had filed a motion for removal in this particular case. And then we filed a 59E motion, which was also denied. The issue in this case pertains largely to a case that came before you, Justices, relating to the Denning case. And I think that we are trying to distinguish the Denning case. And also, there are other cases that arise out of the same procedural basis. Dodson is a designated doctor, which is a certification under the Department of Insurance. She specialized in testing and training in workers' compensation injuries and performed independent exams for the Texas Department of Insurance, and that would be the workers' compensation division. She also had her own chiropractic practice. The designated doctor signs into an automated online system, which is called TxComp, and has a personal profile and goes to the places that are designated for her to do those exams. And ExamWorks is basically the middleman. They operate the system, and they can tell the doctor where to go, but they're also doing the billing. Now, under the Texas Occupations Code, the Texas Occupations Code provides that there is an agency relationship. The appellee has argued in their brief that because the contract states that there is not an agency relationship, that there is not one as a matter of law, but as a matter of law, there is an agency relationship. And the designated doctor in this case is personally responsible for the agent company's actions concerning these designated doctor exams. So the designated doctor is on the hook if there is an overbilling problem, if there is a failure to follow the Texas Occupations Code. The agreement that was signed with a prior company called Landmark was in 2017. Landmark was succeeded by ExamWorks. And the rates for the designated doctor exams are established and regulated by the Texas Department of Insurance. So then basically you have a contractor who is responsible for making sure that ExamWorks is following the law and can lose her license, can be fined, all of those kind of things that can be done. Well, let me ask you a question about that. All of the particular overbilling occurred when? I'm sorry, your question was? When did the particular overbilling occur? Well, it has occurred. They found out about it in time to file this action. Well, 2015 to 2018, right? Correct. Six years ago. But we were unable to discover that and have had a very difficult time trying to get any discovery from ExamWorks because they just refused to answer. Do they still handle this kind of billing? I don't know the answer to that question. Well, I was just wondering because it seems to me a person in your position or arguably the companion cases, once you found out about billing errors, should have reported them to the Texas, you know, regulatory agency. I don't know if Dodson did that. I'm under the understanding that there was a complaint made, but the Texas Department of Insurance is not involved in this particular appeal. Let me ask you another thing. Since this ended in 2018, would it not be correct that the statute of limitations has run for any possible adverse action on it? I don't believe so because of the discovery rule. The discovery rule provides that if you are unable to obtain that information, then the statute of limitations. Well, I know that's your theory as to ExamWorks, but if the Department of Insurance has some responsibility for auditing ExamWorks or something like that and they were the ones who might come back or the medical board back against your client, what's the limitations period for state action against your client? I have not examined the statute of limitations as it would apply to the state agency, but all of this comes out of contract, as the justice knows, and there would be a four-year contractual statute of limitations. However, you have a tolling when you don't know what's going on, and ExamWorks continued to refuse to give any information to the chiropractors that I represent, and they scheduled, billed, and collected for Landmark and then for ExamWorks. The designated doctor was required to do that, and they were billing in excess of the maximum rates and committing insurance fraud, billing for things that were not committed. Do I read your claim correctly to say that you want to obtain a portion of the overbilled amount? That is only one part of our case. The gravamen of our case is the breach of fiduciary duty. It is the fact that there was a breach of contract and that they were committing fraud, and all of those damages are different because there's pain and suffering, there's emotional distress. You're saying those are non-economic damages. Right, and also the fact that there are nominal damages that can be awarded, which also gives a rise to attorney's fees. So these are very concerning to Dr. Dodson because she has had to expend a substantial amount of money to be heard on this issue. And if a person, we distinguish the Jackson v. Fidelity and the Casperet cases as well because they are cases in which the party did not even engage in business. For instance, a suit against a life insurance company when you don't even buy the life insurance. So those cases are not dispositive of this case because there clearly was a relationship, which is a fiduciary relationship, between ExamWorks and Dr. Dodson. And Judge Howell issued his report saying there was no injury in fact and it was not redressable. However, Dr. Dodson filed objections to the report and brought to the court's attention that the breach of contract itself confers standing on Dr. Dodson, and the Ameripath and the Denning case talk about the fact that just because the magistrate said the injury was not redressable. Let me stop and just ask you maybe a more basic question that I'm lost. I'm sorry, Your Honor? I'm about to ask you a question. Putting in context what you've said about what ExamWorks did, pinpoint for me, assuming they did what you said, but pinpoint for me how directly your client is injured such that there is a nexus from her to them that triggers remuneration of whatever kind to your client. Your argument seems to be that indirectly somehow, because she's in her zone, she's entitled to this, and that seemed to be where the attention was with the pleading. Just say succinctly, how are you going to end to that? What is the best case that is similar to your client's posture that establishes a nexus directly to where whatever they did, she's got a personal injury or an individualized injury rather than kind of an abstract one. Do you follow my question? I understand the point. The point that the appellee was making was that our client had no injury in fact. No, no, no, no. I'm not asking you to restate their argument. I'm asking you a direct question. What do you say on behalf of your client is the direct nexus between her and ExamWorks that caused an injury to her, not some indirect . . . I understand, Judge Stewart. What I'm saying is that they did not address the failure to perform the administrative services, which is a breach of fiduciary duty in which nominal damages are assumed. At some point, you're going to have to answer the question. In the Burrough case? Not the question you want to ask. I'm asking you, not from the yellow sheet, not from their brief. I'm asking you to look up here and say, what is the injury that the magistrate judge or somebody else missed that directly injures your client? Do you follow me? The injury is an emotional injury and a pain and suffering primarily because once Dr. Dodson found out that the ExamWorks people were not billing in accordance with the state statute because the rates are set by the state, knowing that she has a duty of responsibility to make sure that ExamWorks is billing appropriately. This caused her worry. It caused her pain and suffering. It caused her a lot of damages. How would she be worried about what they did that triggered some other injury? I mean, you still seem to be arguing an indirect harm, and maybe you're right, but I'm just saying how is she emotionally scarred by their fraudulent activity? Knowing that she has a duty to make them be responsible and that she is subject to losing her license caused her great pain and suffering because she couldn't get the discovery, she couldn't get them to turn over the documents. All right, let's put it this way. She doesn't have a contractual nexus to them that you can point to that would trigger the injury, correct? Yes, she does have a contract. All right, then just pinpoint to me the language that you're relying on. Well, the language in the contract was where they attempted to say, we're not your agent, but the Texas Occupations Code, in fact, says, yes, you are, and yes, you are responsible for the actions of the ExamWorks, and they did have a contract, and the contract that was the problem is that they refused to accept what the Texas Occupations Code provides, which is that they are responsible as designated doctors, and that's 28 Administrative Code 127.200B. Basically, they were operating as an office manager, scheduler, and a person that was feeding business out there, but then the unbelievably, the person who's receiving the opportunity to go do that business is supposed to make sure that the referring person is doing it properly and not violating the law, and they had no ability to do that, so she was stuck in a place where she could not fix the problem, and the injury that you're talking about was... Well, how was she stuck in a place where she couldn't fix the problem? That's the part I don't understand. All she had to do was notify the agency and sever her ties with this organization and say, I think there's some funny business and that they're billing for things that I didn't authorize or that are above the limit, and so I'm not a part of this. I want to exercise myself from anything illegal or bad they're doing, and nobody ever came after her to say, you're part of this and you owe money back, or this is not a situation where the insurance companies came and said, you've engaged in fraud, so nobody's ever come after her, and she could have extricated herself from this publicly to avoid any worry. I mean, of course it might have caused some worry as she is extricating herself, but I don't know how that's actionable. Well, she's certainly entitled to her attorney's fees under Chapter 38, and she's entitled to receive the money that she was entitled to, but the fiduciary relationship like navigant consulting is it arises from the principal and agent, and if you have a fiduciary relationship with someone, even the Burrough case says that the court may impose fee forfeiture based on the claim of breach of fiduciary duties. What fees do you want to forfeit? Well, the issue is that they were engaging in conduct that was fraudulent and getting... Are they nominated or do they appointed by the state of Texas to do this service for the injured workers? I believe that they are, that they are entitled to, they make an application to do this work, and she, yes, she could have stopped doing this work. I agree with Judge Elrod. Well, what she could have done was, as Judge Elrod said, go to the Texas workers' comp people or the employment agent division of the state and blow the whistle on them. But she had a duty to go and seek disgorgement from exam workers. She doesn't have a right to disgorge anything from exam workers. But she had a duty to bring to light what was going on, but she couldn't get the documents. She doesn't want to be slandering exam workers. And Pettis v. Kirk and Kerrigan said, just because you embarrass someone, that you're entitled to get a judgment for mental anguish. And the Diakuk case said that the court can give you a disgorgement of the fee in case of breach of fiduciary duty. So this was a breach of contract, pure and simple, and she was not able to bring forth the claims because of the failure to provide the documents. Thank you. Thank you, Judge Jones. I'm for rebuttal. Mr. Romero. So what's the status of ExamWorks with the state of Texas today? Good morning, Your Honor, and may it please the court. Judge Jones, the status of ExamWorks is it's doing very well. The status of ExamWorks is that it continues to conduct business. The status of ExamWorks is that seven years after Dodson left the company, no insurance company has come out of the woodwork and said, hey, you defrauded us. No licensure agency has come out and said you defrauded us. No one said there's been fraud except for Ms. Dodson and her cohorts, Your Honor. But so several doctors have said that they've charged more than they were allowed to charge. That's correct. Several of Ms. Klein's clients, all of whom I understand are chiropractor friends, have filed companion lawsuits that have been recently consolidated with this case, Chief Judge Elrod. That's correct. And the agency's never looked into it at all? There's no evidence of that. I'm unaware that the agency has ever looked into it. To Judge Jones's question, none of these folks, as I understand it, have gone to the agency and said, hey, someone's using my license to commit fraud, which if you really thought that there was fraud, I suppose that would be the first step instead of filing a lawsuit. Have all of these people been able to extricate themselves from the relationship with ExamWorks without any kind of financial penalty? Yes, Your Honor. Judge Elrod, they've terminated the contracts. They've walked away. There's no penalty or any downside to them. Ms. Dodson did that in 2018. Now, Your Honor, to establish standards— They can move on with a different provider. They're still able to do this type of work with a different third part, a different middleman, right? That's correct, Your Honor. My client will tell you there's plenty of competitors in the marketplace. And so I understand they're still doing these types of examinations. Now, Your Honor, to establish standing plaintiff bears the burden to show two things. First, an injury in fact, and second, redressability by the court. Neither is present here. In its simplest terms— What about that? Would the headache be, you know, assuming that she had emotional injuries because she's staying up at night worrying, oh, my gosh, they're doing fraudulent activities and I'm somehow on the hook for that because they're going to think I'm in cahoots with them. And so you're staying up at night worrying about that. Why isn't that an injury? Sure. I understand that that's the claim injury. But there are cases directly on point to speak to this. And what this is, to be clear, is a fear of something that's going to happen in the future. And the Clapper case from the U.S. Supreme Court, and there are a number of cases from this court that say that future harm has to be certainly impending. And that's really the key here because, as I started off saying, this alleged misconduct happened in 2018. Here we are in 2025. No agency has come out of the woodworks. And by the way, one of Your Honors asked, what's the limitations? I think it was Judge Jones. What's the limitations on administrative misconduct? And it's six years, Your Honor, for the agency to come out and do something. That has come and gone. We think the limitations period here has come and gone. And like I said, the insurance company, who's the real injured party here if the alleged misconduct took place, has never come out and done anything. What do you say about their argument about the agency, the statute creating an agency relationship? Sure. One clarifying point on that. My friend on the other side mentioned the Occupations Code. That's a statute. What they really point to is the Texas Administrative Code. And that's an important question because this is an agency of the state of Texas that comes out and says, for purposes of this subchapter, the exam works type entities are agents, such that if there's a penalty to be assessed under the administrative framework, you can't shrug your shoulders and say, oh, that was exam works, not me, for administrative penalties. That's the importance. So what Dotson is attempting to do is to say, look, in this administrative code from the Texas Workforce Commission, we're going to extrapolate that and tell the court that the administrative agency has decided that exam works is an agent for all purposes under the common law and all the attendant duties. Of course, Your Honors know that that's not how it works. It's the court deciding what is an agency versus some Texas state agency. Well, but even under your construction of it, theoretically, if Texas, the agency believed that exam works was overbilling, then it would be Dr. Dotson's responsibility, right, under that provision? I believe that's right. If the agency came out and said, exam works, you did something wrong, I think they could say, and Dr. Dotson, you're responsible. Right. Of course, that didn't happen. Right. But that's theoretical in the agency context. Right. Another important fact, Judge Jones, is the party's contract is clear about the status of the parties. I mean, it is literally, the title of it is independent contractor agreement, and it has a huge disclaimer in there that says exam works is not an agent of the doctor, not a joint venture. They are independent contractors. And that's important because Texas law looks to intent. What did the parties intend this relationship to be? And it couldn't be clearer what the parties intended this to be. Not an agency relationship. Right. So you don't ever get to fiduciary duty. How then would the, if exam works had inadvertently charged too much money, and the doctor was keeping up with all of this and said, oh, you're charging too much, you need to fix this, would the doctor have any way to require that if they're independent contractors and that sort of thing? Or how would that, what would be the relationship vis-a-vis the amount charged to the insurance company? Sure. Your Honor, in that hypothetical, if the parties knew there was an overcharge, my suspicion is they would correct that with the insurance company and disclose it to the governing agency. Could the doctor require exam works to correct it if they had a dispute? Or would exam works, because they're independent contractor, be, don't, you know, not do it? What is the relationship? Who's in charge of that billing relationship? Of the billing relationship, I would say that falls in the lane of exam works. And the way this works is there's a fixed amount. Let's use easy numbers here. So an exam is $500. The way this works is exam works immediately pays the doctor and takes on the risk of whether the insurance company pays it or not, the doctor's getting paid. So $500, $250 goes to the doctor immediately. Exam works goes and bills the insurance company. If the insurance company says sorry, not covered, exam works takes on that risk. But that's the way it works functionally, Your Honor. Now, in its simplest terms, plaintiff wants to recover monetary harm that was suffered by someone else. Here are the insurance companies who are not parties to this lawsuit, who have not come out of this lawsuit, who have not intervened. We've never heard from those folks. Across all four claims, plaintiff accuses exam works of committing two forms of misconduct, and this is really where they hinge standing on. They say exam works either billed insurance companies for work that Dotson never performed or they overcharged the carriers for that work, and she wants to be compensated for that alleged ill-gotten gains. And then she says in doing so, exam works potentially exposed the plaintiff to regulatory action or legal action. Back up a step. When counsel went up, she's thinking about her complaint, a first amended complaint, you know, that the trial court kind of mixed up which pleading, et cetera, et cetera. So, you know, this is here on a dismissal, et cetera. So what's your response to her arguments about, I guess, what's the live complaint or her inability to get it? I mean, is she alleged enough? You know, is this an argument about the next step versus her getting booted out at the early stage? Sure, Your Honor. So the procedural posture of the case is such that there was a lawsuit filed in state court. It was amended again in state court, removed to federal court. So under guiding precedents, that's your one chance. That's your free amendment. And we filed a motion to dismiss the first amended complaint. That is what the court ruled on. In conjunction with that, the plaintiff just unilaterally filed a second amended complaint, didn't seek leave of court, didn't have consent of the parties, just filed it. And we cite in our brief the case law from the Fifth Circuit that says that is a legal nullity. And the magistrate judge in granting the motion to dismiss, we filed a motion to strike that, and the magistrate judge said, well, it's moot now. He recommended the denial of any motion to leave for leave because it was never sought. So certainly I think there's no dispute. The first amended complaint is the complainant issue. The second amended complaint is there. But I think it's valuable to the court, and here's why. I suspect my friend on the other side will say, well, let us plead again. We know what they're going to plead. We don't have to guess about what they've pled. They plead it, and it doesn't cure the deficiencies. There's still an absolute lack of standing. There's no injury in fact, and there's no redressability. So as Judge Howell found and as Judge Nallen affirmed, any amendment would be futile. And that is more than a good reason to reject any motion for leave, even though there was never one filed. Let me ask you a question. Suppose we remove the allegations that Exam Works fraudulently or irregularly billed the insurance company. Is there still a claim for breach of contract if Exam Works did not pay 50% of whatever it did bill? Sure, Your Honor. If you look at the first amended complaint, and I know you mentioned record on appeal sites are helpful, so let me give it to you, record on appeal site 30, when you look there, the plaintiff has pled themselves out of a contract claim. There's no contract claim here because there's no breach. What they say on record site of appeal 30 is that the independent contractor agreement existed of Exam Works agreeing to provide administrative services in exchange for half the maximum allowable rate that could be charged for the services. The rates that may be charged are capped by TDI. Then you look on record on appeal page 31, and it is all about overbilling. There is no claim in this lawsuit that they weren't paid half the maximum rates. They were. This is all about overbilling. This is Ms. Dotson saying, hey, you billed for services I didn't do. I want half of that. You overbilled for services. I want half of that. But the contract only requires Exam Works to pay half, and there's no dispute, Your Honors, that that's what happened. In fact, when you look to the second amended complaint, she just comes out and says it, and that's at record on appeal 162, and I'll read it. They say Exam Works fraudulent intent is evidenced by the fact that Exam Works distributed fees to Dotson in accordance with the permissible rates and charges while keeping all excess amounts for itself. So there you have it. There is no breach of contract, Your Honor. Okay. So I know my time is getting a little bit short. Let me just jump to this. Sorry. Excuse me. Can you address the nominal damages? I know you've done disgorgement, other fees, and you've also done emotional distress. Now do nominal damages. Sure, Your Honor. On nominal damages, the fact that you put a certain name on the damages you seek certainly doesn't satisfy standing. But importantly, in order to get nominal damages, you've got to have a legally protected right that has been harmed. Legally protected right. And that's important here because the only legally protected right here, and it's not one, is half of the illegal gotten gains. And so you don't even get to nominal damages because you don't have an injury in fact that's redressable. So whether you're seeking nominal damages or any type of other damages, it doesn't matter. You can't subvert standing by saying, I just want a dollar. In order to get a dollar, you've got to have a legally protected right. Would this be a very different case if the agency had sent them both a letter and said, we're investigating whether or not these exams were actually done and whether or not they were overbilled? Your Honor, it would be closer. They would have a closer call to having certainly impending that magic language that Clapper in this court has used. So I suppose we can have a hypothetical where the agency comes out and says, there's been a report of fraudulent billing. We're looking into the fraudulent billing. We've got some questions for you. Maybe that's closer. I don't know that it gets them there. There are cases where there have been grand juries called to bear, and that's probably impending. But here, we're on the complete opposite end of the spectrum, where it's been seven years since she's even worked at Exam Works. No one's come out and made any of these allegations. It's been two years since she filed this lawsuit, publicly filed a lawsuit, saying you've committed fraud, ripped off insurance. Still no one's come out. And again, the limitations period is far gone. And so when you look on the wide spectrum, this one is on the farthest end you can get, where there's nothing certainly impending, absolutely nothing. And the likelihood that it's ever going to happen is nil. So they don't get there, Chief Judge Elrod. So there's no injury, in fact. The alleged injury was to insurance companies, not plaintiffs. The request for money damages for these ill-gotten gains does not redress the injury here. Paying plaintiffs any money won't cure the alleged injuries to insurers. And then, as we just discussed, the speculative fear of harm is far from sufficient to establish any injury or redressability. And then I'd like to remind the Court that even aside from the standing issue, the magistrate judge found that these claims fail on the merits. He went through, I thought, in a pretty detailed opinion and went through every cause of action and talked about how they don't meet the heightened pleading standard for fraud, 9B, both in the fraud and the fiduciary duty, which is premised on fraud, that the declaratory judgment actions are duplicative, and that there was no breach of contract. And even if there was, she doesn't have an injury, in fact, that's redressable by the Court. In fact, as the lower court noted, quoting here, even accepting all of her allegations is true. She's not among those allegedly injured because she did not suffer the harm she complains of, namely overbilling insurers. Instead, she received exactly what she bargained for, half the maximum allowable rate that could be charged. I direct the Court's attention to the Thull case, the U.S. Supreme Court case there. I think it aligns pretty well. It's a breach of fiduciary case in a defined benefits plan where the plaintiff was promised to receive, I don't remember the exact number, call it $1,000 a month, for the rest of her life. She sued the administrator saying, you're administrating this plan, and you breached your fiduciary duties. You caused $450 million worth of damages to this plan, and you breached your fiduciary duties. The Supreme Court said, no, no, no, you don't have standing. Regardless of your allegations, you received everything you're entitled to. And that is the exact same thing here, Your Honors, that there's no question she received half the allowable maximum charges set by TDI. And that's kind of case closed as far as Thull and the U.S. Supreme Court matching exactly with this case. And Chief Judge Elrod and Stewart, I know you all are familiar with the Denny case. Judge Stewart, I believe you wrote it. Just because you claim a breach of contract doesn't establish standing. Just like in that case where the plaintiff sued and said, hey, health care provider, you ripped off my insurance company. Give me the money. Exact same facts here. And the court correctly found that there was no standing. And this case is no different. I mean, it aligns very well with the Denny case. And for the same reasons the court found no standing there, the court should find no standing here. I think we've covered everything I came up to cover, but I'm happy to answer any other questions if the court has any. No, sir. Thank you, Your Honors. Ms. Kline, rebuttal. Again, I think that the case that's the closest to the issues that are here before us today is Tyler v. Hennepin. Because Tyler v. Hennepin talks about when a tax body, which is the public agency, works for the government, that the tax office had seized a property and sold it, but then they received more money for the property than what they had expected to, and they kept more money than they should have. And the U.S. Supreme Court in 2023 said that's an injury in fact. And again, this is where there's not a contractual relationship, but that's a public function. And agency is defined under 127.200 to say that, yes, this is your agent. Now, the pleadings, as you know, are taken in light most favorable to the plaintiff. But they've alleged that we don't have standing. They've alleged that redressability is an issue. But the case law says that nominal damages satisfy the redressability issue. So because we have pled a contract, because we have pled the breach of fiduciary duty, again, we go back to the second amended complaint. This motion was granted on the first amended complaint. And the Western District says that when you have filed an amended pleading, and again, I admit that there was not a motion for leave. However, when you file an amended pleading, it renders the prior pleading moot under the rules of the Western District. And so it's our position that the court should reverse and remand this case. And again, there's fraud by nondisclosure. Clearly, there was nondisclosure on the part of Exam Works. They did not tell Dr. Dodson and the other chiropractors, we're actually charging more than what the mandated amount is. And there's constructive fraud, because any time you have a breach of fiduciary duty, there's constructive fraud for anything that is concealed. So there's also fraud by nondisclosure, by failure to advise what was going on and what was the game here. In 201.5025A3 of the administrative code, it says that if there's unprofessional or dishonorable conduct likely to deceive the public, that that is a breach of fiduciary duty. Well, clearly there was a failure to advise the public, we're taking more of your benefits than what we're entitled to. And that would be deception to an average person who is receiving benefits for workers' compensation. They cited Jackson, which also has no applicability, because, again, it was related to a title policy, not to a direct relationship between two individuals. I think that taking all in all, because there are nominal damages that are eligible under Adams v. City of Harahan, and the restatement second of contract says that there's a small sum that should be awarded as nominal damages for a breach of contract, and there was fraud by nondisclosure and constructive fraud that for the judge in the Western District to have limited his opinion to disgorge and overbilling, failed to recognize the other theories that are pleaded by the plaintiff and did not give the plaintiff an opportunity to be heard on the complaint and was not allowed. And so that the failure to alter or amend the judgment under 59E was a mishandling of this case, and that Dr. Dodson did not get a fair hearing in this matter. We are asking the court to reverse and remand the decision of Judge Nolan and allow Dr. Dodson to go forward on her claims. If there are any other questions, I'll be happy to answer them, otherwise I've completed my presentation. All right. Thank you. Thank you very much.